JS 44 (Rev. 07/16)

17-cv-865

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS**
PHILADELPHIA FEDERATION OF TEACHERS HEALTH AND WELFARE FUND

**(b)** County of Residence of First Listed Plaintiff: Philadelphia, PA
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Marc H. Edelson, EDELSON & Associates
3 Terry Drive, Suite 205, Newtown, PA 18940
215-867-2399

**DEFENDANTS**
ACTAVIS HOLDCO U.S., INC., BRECKENRIDGE PHARMACEUTICAL, INC., HERITAGE PHARMACEUTICALS INC.,

County of Residence of First Listed Defendant: Morris, NJ
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

RT

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Personal Injury - Medical Malpractice

PERSONAL INJURY
- ☐ 365 Personal Injury - Product Liability
- ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 440 Other Civil Rights
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 448 Education

**PRISONER PETITIONS**

Habeas Corpus:
- ☐ 463 Alien Detainee
- ☐ 510 Motions to Vacate Sentence
- ☐ 530 General
- ☐ 535 Death Penalty

Other:
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition
- ☐ 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Management Relations
- ☐ 740 Railway Labor Act
- ☐ 751 Family and Medical Leave Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Employee Retirement Income Security Act

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 465 Other Immigration Actions

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 375 False Claims Act
- ☐ 376 Qui Tam (31 USC 3729(a))
- ☐ 400 State Reapportionment
- ☒ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 895 Freedom of Information Act
- ☐ 896 Arbitration
- ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ☐ 950 Constitutionality of State Statutes

**V. ORIGIN** *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from Another District *(specify)* ☐ 6 Multidistrict Litigation - Transfer ☐ 8 Multidistrict Litigation - Direct File

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*: 15 U.S.C. §§1, 3; 15 U.S.C. §26
Brief description of cause: Complaint alleges that Defendants participated in a price-fixing conspiracy regarding generic Propranolol sales

**VII. REQUESTED IN COMPLAINT:** ☒ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P. **DEMAND $** CHECK YES only if demanded in complaint: **JURY DEMAND:** ☒ Yes ☐ No

**VIII. RELATED CASE(S) IF ANY** *(See instructions)*: JUDGE HON. CYNTHIA M. RUFE DOCKET NUMBER 17-cv-00144; 17-cv-00535

DATE 2/23/17 SIGNATURE OF ATTORNEY OF RECORD [signature]

**FOR OFFICE USE ONLY**

RECEIPT # AMOUNT APPLYING IFP JUDGE MAG. JUDGE

FEB 24 2017

CMR 17 865

# UNITED STATES DISTRICT COURT

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.**

Address of Plaintiff: 1816 Chestnut St, Philadelphia, PA 19103

Address of Defendant: ACTAVIS HOLDCO U.S., INC., Morris Corporate Center III, 400 Interpace Parkway, Parsippany, New Jersey, 07054

Place of Accident, Incident or Transaction: Philadelphia, PA

*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?
(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a)) Yes☐ No☒

Does this case involve multidistrict litigation possibilities? Yes☐ No☐

*RELATED CASE, IF ANY:*
Case Number: 17-cv-00144; 17-cv-00535 Judge Cynthia M. Rufe Date Terminated:

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
Yes☐ No☐
2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
Yes☒ No☐
3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
Yes☐ No☐
4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
Yes☐ No☐

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*
1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☒ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
(Please specify) ______

B. *Diversity Jurisdiction Cases:*
1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
(Please specify) ______

## ARBITRATION CERTIFICATION

*(Check Appropriate Category)*

I, Marc H. Edelson, Esq., counsel of record do hereby certify:

☒ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☒ Relief other than monetary damages is sought.

DATE: 2/23/17 [signature] Attorney-at-Law Atty. ID No. 51834 Attorney I.D.#

**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

**I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.**

DATE: 2/23/17 [signature] Attorney-at-Law Atty. ID No. 51834 Attorney I.D.#

CIV. 609 (5/2012)

FEB 24 2017



IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

PHILADELPHIA FEDERATION OF TEACHERS HEALTH AND WELFARE FUND, on behalf of itself and all others similarly situated, : CIVIL ACTION

v.

ACTAVIS HOLDCO U.S., INC., BRECKENRIDGE PHARMACEUTICAL, INC., HERITAGE PHARMACEUTICALS INC., MYLAN INC., MYLAN PHARMACEUTICALS INC., PAR PHARMACEUTICAL HOLDINGS, INC., QUALITEST PHARMACEUTICALS, INC., ROUSES POINT PHARMACEUTICALS, LLC, TEVA PHARMACEUTICALS USA, INC., UDL LABORATORIES, INC., and UPSHER-SMITH LABORATORIES, INC., : NO. 17 865

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255. ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits. ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2. ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos. ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.) (xx)

(f) Standard Management – Cases that do not fall into any one of the other tracks. ( )

| 2/23/17 | [signature] | Plaintiffs |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-867-2399 | 267-685-0676 | medelson@edelson-law.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

FEB 24 2017




UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA



**PHILADELPHIA FEDERATION OF TEACHERS HEALTH AND WELFARE FUND**, on behalf of itself and all others similarly situated,
**Plaintiffs,**

v.

**ACTAVIS HOLDCO U.S., INC., BRECKENRIDGE PHARMACEUTICAL, INC., HERITAGE PHARMACEUTICALS INC., MYLAN INC., MYLAN PHARMACEUTICALS INC., PAR PHARMACEUTICAL HOLDINGS, INC., QUALITEST PHARMACEUTICALS, INC., ROUSES POINT PHARMACEUTICALS, LLC, TEVA PHARMACEUTICALS USA, INC., UDL LABORATORIES, INC., and UPSHER-SMITH LABORATORIES, INC.,**
**Defendants.**

**CLASS ACTION COMPLAINT**

**DEMAND FOR JURY TRIAL**

**No:** 17 865

FILED
FEB 24 2017
KATE BARKMAN, Clerk
By ______ Dep. Clerk

Plaintiff, Philadelphia Federation of Teachers Health and Welfare Fund, ("PFTHW" or "Plaintiff") brings this action both individually and on behalf of a class of persons or entities which purchased, paid and/or provided reimbursement for some or all of the purchase price of generic Propranolol capsules and tablets manufactured by Defendants, Actavis Holdco US, Inc., Breckenridge Pharmaceuticals, Inc., Heritage Pharmaceuticals Inc., Mylan Inc., Mylan Pharmaceuticals Inc., Par Pharmaceutical Holdings, Inc., Qualitest Pharmaceuticals, Inc., Rouses Point Pharmaceuticals, LLC, Teva Pharmaceuticals USA, Inc., UDL Laboratories, Inc. and Upsher-Smith Laboratories, Inc. (each a "Defendant" or collectively "Defendants").

## I. INTRODUCTORY STATEMENT

1. Defendants are accused of engaging in a conspiracy to fix, maintain, and/or stabilize the prices of generic Propranolol capsule and tablet products. All allegations herein are



based on information and belief, except for those relating to the Plaintiff.

2. Propranolol is a generic blood pressure medication available by prescription. It is used to treat tremors, angina, hypertension, heart rhythm disorders, and other heart or circulatory conditions. It can also be used to prevent migraine headaches and relieve uncontrollable shaking. Generic Propranolol has been available since the late 1980's. Propranolol works as a beta-blocker, which causes the heart to beat more slowly and with less force, reducing blood pressure. Beta blockers also improve blood flow by opening up blood vessels. It is available as a capsule, injection, or tablet. The claims here involve price increases for generic Propranolol capsules and tablets.

3. According to the U.S. Food and Drug Administration, nearly eight out of ten prescriptions filled in the United States are generics. Generic drugs are required to have the same active ingredient, strength, dosage form, and route of administration as the brand name product. Historically, generic drugs have sold at seventy-five percent less than the branded version.[1] As of June 2015, it was estimated that consumers save $8 to 12 billion per year at the pharmacy.[2]

4. Skyrocketing price increases for generic drugs, frequently in lockstep by multiple manufacturers, recently has caused multiple federal and state agencies to launch investigations into the generic drug industry's pricing practices, including the House Committee on Oversight and Government Reform, the Subcommittee on Primary Health and Aging, Senate Committee on Health, Education, Labor and Pensions, the Justice Department, and multiple states' attorneys general.

---

[1] http://www.fda.gov/Drugs/ResourcesForYou/Consumers/BuyingUsingMedicineSafely/UnderstandingGenericDrugs/ucm167991.htm.

[2] http://www.fda.gov/Drugs/ResourcesForYou/Consumers/BuyingUsingMedicineSafely/UnderstandingGenericDrugs/ucm144456.htm.

5. These price increases do not stem from competitive behavior caused by, for instance, supply shortages or changed product demand. Rather, Defendants have engaged in a broad and wide-ranging conspiracy to fix, raise, maintain and stabilize generic drugs' prices, and to allocate customers and markets for them. Defendants effectuated their conspiracy by direct business-to-business contacts among generic drug manufacturers, secret communications and meetings, and/or joint participation taken under the guise of trade associations like the Generic Pharmaceutical Association ("GPhA"). For example, representatives from Defendants attended GPhA meeting in Orlando, Florida from February 20 - 23, 2013 and another in Bethesda, Maryland in October 2013. Shortly after these meetings, the price for generic Propranolol capsules increased by extraordinary amounts.

6. During October 2014, Rep. Elijah Cummings, Ranking Member of the House Committee on Oversight and Government Reform, and Sen. Bernie Sanders, Chairman of the Subcommittee on Primary Health and Aging of the Senate Committee on Health, Education, Labor and Pensions, launched investigations into soaring pricing for generic drugs. Senator Sanders noted "[m]ore than one out of four Americans do not fill their prescriptions because they cannot afford the cost." As a result of joint document requests sent to generic drug manufacturers, the investigative committee received over 300,000 pages of documents. According to Representative Cummings, these documents "provide an insider's view into how drug company executives are lining their own pockets at the expense of some of the most vulnerable families in our nation."

7. The Department of Justice ("DOJ") and the Connecticut Attorney General's Office ("CTAG") have both issued subpoenas to as many as a dozen generic drug companies concerning prices of at least two dozen drugs. The DOJ's subpoenas arose from a grand jury proceeding in the Eastern District of Pennsylvania that is investigating whether Defendants and other drug

manufacturers conspired to fix generic drug prices.

8. On June 21, 2016, Defendant Teva received a subpoena from the DOJ seeking documents and other information relating to the marketing and pricing of certain of Teva's generic products and communications with competitors about such products. Also, during July 2016, Defendants Actavis and Teva received subpoenas from the Connecticut Attorney General seeking documents and other information relating to potential state antitrust law violations.

9. Additionally, on December 14, 2016, the attorneys general ("AG") of twenty states filed a complaint against multiple generic manufacturers of doxycycline hyclate for conspiring to fix the prices and allocate the market for this medication.[3]

10. Significantly, the AG Complaint indicates that these actions by the generic manufacturers of doxycycline hyclate were not isolated and limited to that drug. Rather, the AG Complaint mentions a "wide-ranging series of conspiracies implicating numerous different drugs and competitors."[4]

11. The AG Complaint acknowledged that "[m]ost of the conspiratorial communications were intentionally done in person or by cell phone, in an attempt to avoid creating a record of their illegal conduct. The generic drug industry, through the aforementioned opportunities to collude at trade shows, customer events and smaller more intimate dinners and meetings, allowed these communications to perpetuate. When communications were made in writing, or by text message, some of the Defendants even took overt and calculated steps to destroy evidence of those communications."[5]

12. Propranolol is one of the generic drugs which has experienced recent, unusually

---

[3] *State of Connecticut v. Aurobindo Pharma USA, Inc.*, No. 3:16-cv-2056 VLB (D. Conn.).
[4] *Id. at* ¶9.
[5] *Id. at* ¶13.

high, price increases. During August 2016, the United States Government Accountability Office (GAO) issued a report to Congress which evaluated generic drugs' price history from 2010 through the second quarter of 2015.[6] The GOA found that 315 of the 1,441 established drugs in its market study experienced an extraordinary price increase[7] while many other generic drugs continued to decline in price.

13. During December 2013, Defendants began simultaneously increasing prices for generic Propranolol capsules. The prices for generic Propranolol capsules increased by at least 221% by December 2014. From January 2014 to January 2016, the prices for generic Propranolol tablets increased by over 400 to 900%.

14. Plaintiff believes that generic Propranolol's extraordinary price increases result from a conspiracy among these Defendants to fix, raise, maintain and stabilize generic drugs' prices, and to allocate customers and markets for generic Propranolol capsules and tablets. These increases were neither the product of a competitive market, nor made necessary by any increased manufacturing costs. Defendants' price increases resulted from their conspiracy to restrain trade.

15. Defendants' conspiracy has further benefited from oligopolistic market conditions, caused by the low number of competitors and barriers to entry in the generic Propranolol market. Such conditions have allowed Defendants to sustain anticompetitive behaviors such as their increased pricing as of the filing of this Complaint.

16. Defendants' conspiracy to fix, raise, maintain and stabilize the prices of generic Propranolol capsules and tablets has caused and continues to cause consumers and third-party payors to pay supracompetitive prices for generic Propranolol.

---

[6] Part D Generic Drug Prices Declined Overall, but Some Had Extraordinary Price Increases GAO-16-706: Published: Aug 12, 2016. Publicly Released: Sep 12, 2016.

[7] Defined as a price increase of at least 100 percent. *Id. at* 12.

17. Plaintiff brings this civil antitrust action on behalf of a proposed class of endpayors who indirectly purchased, reimbursed, or otherwise paid for (1) generic Propranolol capsules or (2) generic Propranolol tablets (collectively "Propranolol").

18. Plaintiff seeks to certify a class, the "Injunctive Class", composed of all individuals and entities in the United States or its territories who indirectly purchased, paid, and provided reimbursement for some or all of the purchase price for Propranolol capsules and tablets, other than for resale, for consumption by itself, its families, or its members, employees, insureds, participants, or beneficiaries, from at least April 18, 2013 to the present ("Propranolol Capsules Class Period") and (2) from March 18, 2015 to the present ("Propranolol Tablets Class Period"), through and including the date that the anticompetitive effects of Defendants' unlawful conduct ceased (the "Class Periods").

19. Plaintiff also seeks to certify a class, the "Damages Class", composed of all individuals and entities who, in Alabama, Arkansas, Arizona, California, District of Columbia, Florida, Hawaii, Illinois, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Missouri, Mississippi, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia and Wisconsin, indirectly purchased, paid, and provided reimbursement for some or all of the purchase price for Propranolol capsules and tablets, other than for resale, for consumption by itself, its families, or its members, employees, insureds, participants, or beneficiaries, from at least April 18, 2013 to the present ("Propranolol Capsules Class Period") and (2) from March 18, 2015 to the present ("Propranolol Tablets Class Period"), through and including the date that the anticompetitive effects of Defendants' unlawful conduct ceased.

20. Plaintiff seeks overcharge damages and other relief arising out of Defendants'

agreement not to compete in the market for generic Propranolol capsules and tablets.

21. Defendants' coordinated conduct as alleged herein was designed to and did raise, fix, maintain, or stabilize the price of generic Propranolol capsules and tablets. As a result, Defendants violated sections 1 and 3 of the Sherman Act, 15 U.S.C. §§ 1, 3, and the various state antitrust and consumer protection laws enumerated below. Plaintiff seeks damages and injunctive relief to prevent Defendants from continuing and maintaining the anticompetitive combination, conspiracy, or agreement alleged in this complaint.

## II. JURISDICTION AND VENUE

22. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337 and 15 U.S.C. §§ 1, 3 and 26. This Court has subject matter jurisdiction over the state law claims pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(d) and 1367, in that this is a class action in which there are over 100 members of the Class (as defined herein); the matter in controversy exceeds the sum of $5,000,000.00, exclusive of interest and costs; and at least one member of the Class is a citizen of a state different from that of one of the Defendants.

23. Jurisdiction and venue are proper in this Court under 28 U.S.C. § 1391 because Defendants transact business in this District. A substantial part of the interstate trade and commerce involved and affected by the violations of the antitrust laws was and is carried on in part within this District. The acts complained of have and will continue to have substantial effects in this District.

## III. PARTIES

### A. Plaintiff

24. Plaintiff Philadelphia Federation of Teachers Health and Welfare Fund

("PFTHWF") is a voluntary employee benefits plan organized pursuant to § 501(c) of the Internal Revenue Code for the purpose of providing health benefits to eligible participants and beneficiaries. PFTHW maintains its principal place of business in Philadelphia, Pennsylvania. PFTHW provides health benefits, including prescription drug benefits, to approximately 34,000 participants, and their spouses and dependents. During the Class Periods, PFTHWF purchased and paid for some or all the purchase price for generic Propranolol capsules and tablets, thereby suffering injury to its business and property by reimbursing more for this product than it would have absent Defendants' anticompetitive conduct to fix, raise, maintain, and stabilize the prices and allocate markets and customers.

**B. Defendants**

25. Defendant, Actavis Holdco US, Inc. ("Actavis"), is a Delaware corporation with its principal place of business at Morris Corporate Center III, 400 Interpace Parkway, Parsippany, New Jersey, 07054. In August 2016, Teva Pharmaceuticals U.S., Inc. acquired Actavis' generics business from Allergan plc for $33.43 billion in cash and approximately 100 million Teva shares. Actavis manufactures, markets, and sells generic drug products. During the Class Periods, Actavis sold generic Propranolol tablets and capsules in this District and in the United States.

26. Defendant, Breckenridge Pharmaceutical, Inc. ("Breckenridge"), is a Delaware corporation with its principal place of business at 1 Passaic Ave, Fairfield, New Jersey 07004. Breckenridge manufactures, markets and/or distributes generic drugs in the United States. During the Propranolol Capsules Class Period, Breckenridge marketed and sold generic Propranolol capsules in this District and throughout the United States.

27. Defendant Heritage Pharmaceuticals Inc. ("Heritage") is a Delaware corporation with its principal place of business at 12 Christopher Way, #300, Eatontown, New Jersey 07724.

Heritage manufactures, markets and/or distributes generic drugs in the United States. During the Propranolol Tablets Class Period, Heritage marketed and sold generic Propranolol tablets in this District and throughout the United States.

28. Defendant, Mylan Inc. ("Mylan"), is a Pennsylvania corporation with its principal place of business at 1000 Mylan Boulevard, Canonsburg, Pennsylvania, 15317. Mylan Inc. is a global generic and specialty pharmaceuticals company which also operates several divisions and subsidiaries including Mylan Pharmaceuticals Inc. During the Class Periods, Mylan Inc. marketed and sold generic Propranolol tablets and capsules in this District and throughout the United States through its subsidiaries, Mylan Pharmaceuticals Inc. and UDL Laboratories, Inc.

29. Defendant, Mylan Pharmaceuticals Inc., is a West Virginia corporation with its principal place of business at 781 Chestnut Ridge Road, Morgantown, West Virginia 26505. During the Class Periods, Mylan Pharmaceuticals sold Propranolol tablets and capsules in this District and throughout the United States.

30. Defendant, Par Pharmaceutical Holdings, Inc. ("Par"), is a Delaware corporation with its principal place of business at One Ram Ridge Road, Chestnut Ridge, New York 10977. Par develops, licenses, manufactures, markets, and distributes generic drugs in the United States. In September 2016, Endo International completed an acquisition of Par at which time it created a combined U.S. Generics segment that included Par and Qualitest, naming the segment "Par Pharmaceutical, an Endo International Company."

31. Defendant, Qualitest Pharmaceuticals, Inc. ("Qualitest"), is an Alabama corporation with its principal place of business at 305 Church Street SW, Suite 715, Huntsville, Alabama. Qualitest Pharmaceuticals is a wholly owned subsidiary of Endo Pharmaceuticals. During the Propranolol Tablets Class Period, Qualitest marketed and sold generic Propranolol tablets in this District and throughout the United States.

32. Defendant, Rouses Point Pharmaceuticals, LLC ("Rouses Point"), is a Delaware corporation with its principal place of business at 11 Commerce Drive Suite 100 Cranford, New Jersey. Rouses Point manufactures and markets generic and branded pharmaceutical products throughout the United States. During the Propranolol Capsules Class Period, Rouses Point marketed and sold generic Propranolol capsules in this District and throughout the United States.

33. Defendant, Teva Pharmaceuticals USA, Inc. ("Teva"), is a Pennsylvania corporation with its principal place of business at 1090 Horsham Road, North Wales, Pennsylvania 19454. Teva is a subsidiary of Teva Pharmaceutical Industries Limited, an Israeli company with principal place of business located at 5 Basel Street, Petach Tikva, Israel 49131. Teva manufactures, markets, and sells various generic pharmaceutical products. During the Propranolol Tablets Class Period, Teva USA marketed and sold generic Propranolol tablets in this District and throughout the United States.

34. Defendant UDL Laboratories, Inc. ("UDL") is an Illinois corporation with its principal place of business at 1718 Northrock Ct, Rockford, Illinois 61103. At all times relevant hereto, UDL was a subsidiary of Mylan Inc. During the Propranolol Tablets Class Period, UDL marketed and sold generic Propranolol tablets in this District and throughout the United States.

35. Defendant, Upsher-Smith Laboratories, Inc. ("Upsher-Smith"), is a Minnesota corporation with its principal place of business at 6701 Evenstad Drive, Maple Grove, Minnesota. Upsher-Smith manufactures, markets and/or distributes brand-name and generic drugs in the United States. During the Propranolol Capsules Class Period, Upsher-Smith marketed and sold generic Propranolol capsules in this District and throughout the United States.

36. All acts alleged in this Complaint to have been done by Defendants were performed by their officers, directors, agents, employees or representatives while engaged in the management,

direction, control or transaction of Defendants' business affairs.

## IV. CO-CONSPIRATORS AND AGENTS

37. At all relevant times, each Defendant acted in concert, pursuant to a common, unlawful plan and conspired together to fix, raise, maintain, and stabilize the prices and allocate markets and customers, injuring Plaintiff, Class Members and other similarly situated individuals. Each aided and abetted the other. For these reasons, they are jointly and severally liable.

38. The acts alleged against Defendants in this Complaint were authorized, ordered, and/or done by their officers, agents, employees, or representatives, while actively engaged in the management and operation of defendants' businesses and affairs.

39. Other, presently unidentified firms, corporations, entities and/or individuals, not made defendants in the complaint, participated as co-conspirators with Defendants in the violations alleged in this complaint, and performed acts and made statements in furtherance thereof conspiracy alleged. Said firms, corporations, entities and/or individuals can be readily identified from documents in Defendants' possession, and will be named in an amended complaint, with leave of the Court, as soon as the relevant information is made available.

## V. INTERSTATE AND INTRASTATE COMMERCE

40. Defendants' conduct has taken place within the flow of, and substantially affected the interstate commerce of the United States. By way of example, Defendants used the instrumentalities of interstate commerce, including interstate wires and the U.S. mail, to market, distribute and/or sell substantial quantities of generic Propranolol capsules and tablets throughout the United States. Defendants also used interstate wires and the U.S. mail to distribute and/or receive sales and/or marketing information, receipts, invoices, statements and payments related to generic Propranolol capsules and tablets' sales in the United States.

41. During the Class Period, Defendants sold substantial quantities of generic Propranolol capsules and tablets in a continuous and uninterrupted flow of interstate commerce to customers throughout the United States.

42. Defendants' anticompetitive conduct has substantial intrastate effects in that, inter alia, generic Propranolol capsules and tablets have been and are offered at higher prices to end-payors inside each respective state than they would have been or would be but for Defendants' conduct. The complete lack of availability of competitive priced generic Propranolol capsules and tablets directly impacts and disrupts commerce for end-payors within each state.

## VI. FACTUAL ALLEGATIONS

### A. Background Regarding Generic Prescription Drugs

43. "A generic drug is chemically equivalent to its branded counterpart and is generally marketed by multiple manufacturers under a nonproprietary name; generic drugs can be introduced with the Food and Drug Administration's (FDA) approval after the patent for the branded counterpart has expired."[8] Generics in mature markets often cost as little as 10-15% of the branded drug's price.[9] Defendants manufacture and sell, *inter alia*, generic versions of branded drugs once any applicable patent on the branded drugs expires.

44. Once a generic version of a drugs enters the market, the branded drug's market share quickly erodes. Per IMS Health data, generic drugs accounted for 86% of all drugs dispensed in the United States in 2013.[10]

---

[8] *See Generic Drugs Under Medicare: Part D Generic Drug Prices Declined Overall, but Some Had Extraordinary Price Increases*, at 1, GAO-16-706:

[9] FTC Staff Study, *Pay-For-Delay: How Drug Company Pay-Offs Cost Consumers Billions*, at 8 (Jan. 2010), available at http://emmanuelcombe.org/delay.pdf.

[10] IMS Institute for Healthcare Informatics, Medicine use and shifting costs of healthcare: *A Review of The Use of Medicines in The United States In 2013* (Apr. 2014), at 51, available at http://www.imshealth.com/en/thought-leadership/quintilesims-institute/reports/use-of-medicines-in-the-us-2013.

45. As additional versions of a particular generic drug enter the market, the price that consumers and third-party payors pay for the drugs drops. In a competitive market, both the branded manufacturer and the older generic manufacturers lower prices in response to the new competitor, as the following FDA chart shows[11]:

**Generic Competition and Drug Prices**



Source: FDA analysis of retail sales data from IMS Health, IMS National Sales Perspective (TM), 1999-2004, extracted February 2005

46. Thus, generic drugs lower costs for consumers, in the form of lower copayments and other out-of-pocket costs, and for third-party payers, including private health insurance plans such as Plaintiff.

47. Accordingly, generic competition to a branded drug can provide billions of dollars in savings to consumers, pharmacies, other purchasers, private health insurers, health and welfare funds and state Medicaid programs, which reimburse drug purchases for their insureds. A GPhA study found that generic drugs saved the U.S. healthcare system $1.68 trillion between 2005 and 2014, including $254 billion in 2014 alone.[12]

---

[11] FDA, *Generic Competition and Drug Prices*, http://www.fda.gov/AboutFDA/CentersOffices/OfficeofMedicalProductsandTobacco/CDER/ucm129385.htm.

[12] Generic Pharmaceutical Association, *Generic Drug Savings in the U.S.*, at 1 (2015), http://www.GPhAonline.org/media/wysiwyg/PDF/GPhA_Savings_Report_2015.pdf.

48. In 1984, Congress enacted the Drug Price and Patent Term Restoration Act of 1984, (the "Hatch-Waxman Act"), partly to assist manufacturers to bring generic drugs to market more quickly. The Hatch-Waxman Act provides an expedited pathway for generic drug companies to obtain Food and Drug Administration (FDA) approval. The Act created a new type of application for a generic drug manufacturer to file, an Abbreviated New Drug Application ("ANDA") in order to obtain FDA approval. The ANDA permits a generic drug manufacturer to rely on the branded drug's manufacturer's safety and reliability data. An ANDA applicant must show that its generic drug is bioequivalent to the brand drug. This reliance allows the generic company to forego duplicative and expensive experimentation and having to perform its own clinical trials. The FDA will assign a "Therapeutic Equivalence Code" ranging from "AA" to "BX." An "AB" rating signifies that the approved generic drug is therapeutically equivalent to its branded counterpart.

49. Since passage of the Hatch-Waxman Act, pharmacists are permitted, or required by state law, to substitute a less expensive generically equivalent drug for the brand name version unless requested otherwise by the purchaser or indicated otherwise by the prescriber.

50. Defendants Mylan and Watson (now Actavis) have been marketing generic Propranolol products since 1986. Actavis Elizabeth (now part of Actavis) first received approval to market its generic Propranolol in 2007. Upsher-Smith has been marketing generic Propranolol since 2009.

**B. Consolidation of the Generic Drugs Market**

51. In theory, a generic drug may be manufactured and marketed by any pharmaceutical manufacturer after receiving an approved ANDA. However, generic drug manufacturers have recently experienced a global wave of consolidations, acquisitions and mergers which have reshaped the market. Pharmaceutical manufacturers, in order to gain market share and maintain

profitability, have resulted to buying out their competitors. The result, as is the case here, many generic drugs are produced by only a few manufacturers. There are fewer companies applying for new ANDAs for older generics. For instance, in August 2016 Teva acquired Actavis Generics. During 2013, Watson Pharmaceuticals, Inc. acquired the Actavis Group. Both Watson and Actavis received ANDA approvals for generic Propranolol products. Both Qualitest and Vintage Pharmaceuticals, both of which received approved ANDAs for generic Propranolol are now subsidiaries of Endo Pharmaceuticals.

52. The generic Propranolol capsules and tablets market is now highly concentrated. Since 1982, approximately ten different companies received ANDA approvals for generic Propranolol products. Presently, the primary marketers for generic Propranolol capsules and tablets are Defendants herein.

53. The consequence of the generic drug industry's consolidation and coordinated pricing activity has been higher prices for consumers. Market consolidation also has resulted in more generic product lines being combined or discontinued, further reducing price competition.

**C. Propranolol Price Increases**

54. In 2012, the Centers for Medicare and Medicaid Services commissioned a national consulting firm with expertise in Medicare and Medicaid, Myers and Stauffer, to take surveys of pharmacies across the U.S. to determine the average price of prescription drugs. Myers and Stauffer conducts a monthly nationwide survey of retail community pharmacy prescription drug prices and calculates a statistically weighted average price for each drug. The survey evaluates geographic, chain and independent, rural and urban cost variations to arrive at a price for each generic drug surveyed. The National Average Drug Acquisition Cost ("NADAC") is a master list which is updated and published weekly since October 2012. The NADAC thus reflects the actual

costs per unit, in this case grams, that drug manufacturers charge for their medications at retail pharmacies across the United States. Medicaid administrators use the NADAC price information to evaluate their reimbursement policies. The table below compares NADAC prices for generic Propranolol capsules and tablets for each dosage during December 2012, December 2013 and October 2014. These increases were the product of a horizontal agreement among Defendants to increase pricing and restrain competition.

Propranolol Capsules NADAC Price Per Gram

| Dosage | Dec. 2012[13] | Dec. 2013[14] | Dec. 2014[15] | Increase[16] |
|---|---|---|---|---|
| 60 gm | $0.37884 | $0.62 | $1.49 | 293% |
| 80 gm | $0.43211 | $0.70 | $1.83 | 323% |
| 120 gm | $0.59446 | $0.85 | $2.17 | 265% |
| 160 gm | $0.88944 | $1.07 | $2.86 | 221% |

Propranolol Tablets NADAC Price Per Gram

| Dosage | Jan. 2014[17] | Mar. 2015[18] | Mar. 2016[19] | Increase[20] |
|---|---|---|---|---|
| 10 gm | $0.03 | $0.08 | $0.19 | 533% |
| 20 gm | $0.03 | $0.13 | $0.27 | 800% |
| 40 gm | $0.07 | $0.16 | $0.37 | 428% |
| 60 gm | $0.65 | $0.59 | $1.02 | 57% |
| 80 gm | $0.05 | $0.20 | $0.51 | 920% |

55. The foregoing demonstrates the simultaneous actions by all Defendants, which increased the price of generic Propranolol capsules and tablets by a magnitude of over two hundred to several hundred percent.

---

[13] CMS, Weekly NADAC Reference File as of 12/27/2012, available at https://www.medicaid.gov/medicaid/prescription-drugs/survey-of-retail-prices/index.html.
[14] CMS, Weekly NADAC Reference File as of 12/18/2013, available at https://www.medicaid.gov/medicaid/prescription-drugs/survey-of-retail-prices/index.html.
[15] CMS, Weekly NADAC Reference File as of 12/18/2014, available at http://truecostofhealthcare.net/pharmacy_price_index/.
[16] Percentage of price increases of December 2012 prices versus December 2014 prices.
[17] CMS, Weekly NADAC Reference File as of 1/08/2014, available at http://truecostofhealthcare.net/pharmacy_price_index/.
[18] CMS, Weekly NADAC Reference File as of 4/08/2015, available at http://truecostofhealthcare.net/pharmacy_price_index/.
[19] CMS, Weekly NADAC Reference File as of 4/06/2016, available at http://truecostofhealthcare.net/pharmacy_price_index/.
[20] Percentage of price increases of January 2014 prices versus March 2016 prices.

56. Since then, Defendants have acted in concert to maintain their artificially inflated prices for generic Propranolol capsules and tablets. As of January 2017, the price of generic Propranolol capsules and tablets remain more than 200% to 800% higher than the price prior to the 2013 trade association meetings.

57. Without changes in the market or supply shortages, competition in the market for generic Propranolol capsules and tablets should have maintained prices at the late 2012 levels. AARP Policy Institute's Rx Price Watch Report notes that retail prices for 115 specialty prescription drugs increased by 10.6 percent on average in 2013, compared with a 1.5 percent inflation rate over the same period. The sudden, unexplained and sustained price increase can be reasonably inferred to be caused by anticompetitive behavior by the generic manufacturers, i.e., illegal collusion among the generic manufacturers to fix, raise, maintain or stabilize the price of generic Propranolol capsules and tablets.

58. The mirror-image price increases has negatively affected both consumers and third-party payers, such as Plaintiff.

**D. Government Investigations.**

59. During approximately this same period of time that generic Propranolol capsules and tablets prices increased, prices for a number of other generic drugs also increased dramatically. These increases led to investigations by the House Committee on Oversight and Government Reform, the Subcommittee on Primary Health and Aging, Senate Committee on Health, Education, Labor and Pensions, the Justice Department's ("DOJ") Antitrust Division, the Department of Health and Human Services' Inspector General and the attorneys general of Connecticut, Delaware, Florida, Hawaii, Idaho, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland,